HEWETT GRAIN & PROVISION CO. OF ESCANABA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18683. Promulgated November 15, 1928.

*A. H. Ryall, Esq.,* for the petitioner.
*J. E. Marshall, Esq.,* for the despondent.

282

OPINION.

Siefkin: The petition alleges numerous errors on the part of the respondent but at the hearing some of these were abandoned and the questions remaining to be decided as to the year 1920 are whether the respondent erred in:

(1) Holding that the cost to Clyde G. Hewett of certain property which was later turned over to the corporations was the basis to be used for depreciation, and not the amount at which such property was entered upon the books of the corporations when they acquired such property at April 1, 1920;

(2) Excluding from invested capital a note in the amount of $10,971.30, given to the Hewett Grain & Provision Co. of Manistique in payment for stock;

(3) Holding that premiums paid by the corporations on Hewett's life insurance policies were not deductible from gross income; and

(4) Holding that the corporations were affiliated during the years in controversy.

The last question to be decided applies to both 1920 and 1921.

(1) At the time the corporations were organized, April 1, 1920, Hewett turned over to them certain real properties which he had theretofore owned, in exchange for capital stock. Some of the property was entered on the books of the corporations at higher figures than the amounts which Hewett had paid for it. The values at which the property was set up on the books of the corporations, the date at which Hewett acquired the property, and the reductions of values thereof for invested capital purposes by the respondent are set forth below:

| Place located | Value on books | Date acquired by Hewett | Reduction by respondent |
|---|---|---|---|
| Escanaba | $11,300.00 | | $7,252.74 |
| Ishpeming | 36,886.78 | About 1915 | 22,185.28 |
| Manistique | 2,500.00 | About 1918 | 2,031.12 |
| Sault Ste. Marie | 4,600.00 | About 1914 | 3,267.41 |
| Iron River | 10,700.00 | About 1915 | 6,291.42 |

Capital stock was issued for the real property in the amount of the value of such property as set up on the books of the corporations. The respondent has held that the proper basis for computing depreciation on this property is the cost of such property to Hewett. Section 214 (a) (8) of the Revenue Act of 1918 provides:

SEC. 214. (a) That in computing net income there shall be allowed as deductions:

\*     \*     \*     \*     \*     \*     \*

(8) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. \* \* \*.

The basis for calculation of depreciation is the cost of the property to the taxpayer. See *Brevoort Hotel Co.*, 1 B. T. A. 132, and *Louis Titus*, 2 B. T. A. 754.

No question is raised as to the cost of the assets to Hewett or as to the rates of depreciation used by the respondent.

Hewett, who was familiar with real estate values at April 1, 1920, testified that the values of the properties at Manistique, Sault Ste. Marie, Ishpeming and Iron River, at the time acquired by the corporations, were truly reflected by the values carried upon the corporate books. The evidence disclosed that these values were used for local tax purposes. We hold that these were the fair market values of the properties as of April 1, 1920, and that depreciation should be calculated upon those values. The respondent erred in holding that depreciation should be based upon the costs of properties to Hewett. The holding of the respondent with regard to the Escanaba property will not be disturbed, since no evidence was adduced by the petitioner as to the April 1, 1920, value of such property.

(2) The Hewett Grain & Provision Co. of Manistique on April 1, 1920, turned over to Hewett the full amount of its authorized capital stock, par value, $30,000, for all merchandise, bills and accounts receivable, good will, etc., office furniture and fixtures, etc., a warehouse and a lease on the premises occupied by the warehouse, all of the agreed valuation of $29,860, Hewett's note for $10,971.30 and $140 in cash. The note was excluded by the respondent, from the invested capital of the corporation for 1920.

The note has not been paid, but Hewett testified that it would be paid. The evidence disclosed that at the time Hewett gave the note to the Manistique Company he was worth approximately $197,000. We believe that the note was bona fide paid in for stock of the Manistique Co., and find that it was worth its face value. It is, therefore, includable in invested capital at that value, under section 326 (a) (2) of the Revenue Act of 1918. See *Hewitt Rubber Co.*, 1 B. T. A. 424.

(3) It was necessary for the corporations to borrow money to carry on their business and before the banks would loan them money, they required Hewett to take out insurance on his life. Some of the policies were made payable to his wife and some to his estate The premiums were paid by the corporations and the policies were used in the banks as collateral to the corporate loans. The respondent disallowed such payment as deductions from gross income.

Section 215 of the Revenue Act of 1918 provides:

That in computing net income no deduction shall in any case be allowed in respect of—

\* \* \* \* \* \* \*

(d) Premiums paid on any life insurance policy covering the life of any officer or employee, or of any person financially interested in any trade or business carried on by the taxpayer, when the taxpayer is directly or indirectly a beneficiary under such policy.

In a similar case, *Williamson Veneer Co.*, 10 B. T. A. 1259, we stated:

The insurance involved here was upon the life of petitioner's president and in our opinion the petitioner was indirectly a beneficiary during the time the policies were being used as collateral to its loan. It was because of this assignment and pledge to the bank that petitioner was enabled to obtain credit and funds for the operation of its business, which it sorely needed. The respondent did not err in refusing the deductions claimed for the years in question.

See also *Ruth* v. *Heiner*, 20 Fed. (2d) 208.

In the instant preceeding we must affirm the holding of the respondent.

(4) The evidence discloses that in 1920 and 1921 Hewett owned 76.6 per cent of stock of the Escanaba Company and that his wife owned 23.2 per cent in 1920 and 1921.

In 1920 and 1921 Hewett owned 56⅓ per cent of stock of the Manistique corporation and his wife owned 33½ per cent.

In 1920 and 1921, Hewett owned 56⅓ per cent of stock in the corporation at Sault Ste. Marie, and his wife owned 33⅓ per cent.

In 1920 and 1921, Hewett owned 61⅓ per cent of the stock of the Iron River corporation and his wife owned 33⅓ per cent.

In 1920 and 1921, Hewett owned 54¾ per cent of the stock in the Ishpeming Company and his wife owned 25 per cent.

Section 240 (b) of the Revenue Act of 1918 and section 240 (c) of the Revenue Act of 1921 provide:

For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

All of the stock was issued to Hewett at the organization of the corporations and he caused some of the stock to be transferred to others. Hewett sold stock to the managers and assistant managers of the various corporations. Four of them paid for this stock in full and two purchased under a working arrangement and gave Hewett notes. Under this arrangement Hewett had the right to have the stock returned to him whenever the purchaser severed his connections with the corporations, or whenever Hewitt desired, upon his returning the amounts paid by the purchaser. The stock was left with Hewett as security for payment of the notes. Three of those who paid in full for their stock, left the corporation and returned the stock to Hewett in accordance with a previous agreement. No evidence was introduced as to the other person who paid

in full, but we assume that he purchased under some similar agreement with Hewett.

We conclude that Hewett and his wife constituted the same interest that controlled substantially all the stock of the various corporations here involved. We hold that the corporations were affiliated during the years 1920 and 1921.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*